UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LINDSAY JOHNSON,

        Plaintiff,

  v.

PROLINE CONCRETE TOOLS, INC.,

        Defendant.
                            /

NO. CIV. 08-909 LKK/GGH

O R D E R

Plaintiff is a former employee of defendant Proline Concrete Tools, Inc., who has brought suit against it under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940 et seq., for allegedly discriminating against her based on her sex and her pregnancy. Pending before the court is defendant's motion for summary judgment. The court resolves the motion on the papers and after oral argument.

////

////

1

# I. FACTS[1]

Defendant is a California corporation based in San Diego. In November 2006, it hired plaintiff as a Sales Representative for Northern California, Oregon, and Washington. In June 2007, defendant hired a separate Sales Representative for Oregon and Washington and plaintiff continued to serve Northern California. During her employment with defendant, she was never disciplined for her performance or behavior.

According to plaintiff, Larry Freeman conducted plaintiff's interview with defendant. Declaration of Lindsay Johnson in Opposition to Defendant's Motion for Summary Judgment ("Johnson Decl.") ¶ 3. During the interview, he purportedly asked her whether she planned to have any other children and told her that the position was "tough" and "would be hard to do with a newborn." Id. Plaintiff informed Freeman that she did not plan to have any other children. Once she was hired, Freeman acted as plaintiff's direct supervisor. See Declaration of Elizabeth Mancl in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Mancl Decl.") Ex. 1 (Johnson Depo. at 79:12-17); Id. Ex. 2 (Paul Sowa Depo. at 21:20-21, 25:4-6).

Plaintiff has declared that in June 2007, she advised Freeman

---

[1] All facts are undisputed unless otherwise noted.
In its reply brief, defendant has raised several arguments not raised in its Motion and tendered evidence to support those arguments. It is not proper for the court to consider arguments or evidence raised for the first time in a party's reply brief. Von Brimer v. Whirlpool Corp., 536 F.2d 838, 846 (9th Cir. 1974). Therefore, the court disregards all new material raised in defendant's reply to plaintiff's opposition to the motion.

2

that she was pregnant, with an expected delivery date in late-November to early-December, and would need to take six to eight weeks of maternity leave at that time. Johnson Decl. ¶ 5. According to plaintiff, Freeman "responded by yelling at [her] in a very angry fashion." Id. ¶ 6. He purportedly "yelled that he thought that [plaintiff] told him that [she] wasn't going to have any more children" and "that he did not know how defendant's owners, Paul Sowa and Jeff Irwin, were going to feel about it." Id. ¶ 7. He also "yelled that he could not see how [plaintiff] would be able to do [her] job while pregnant and having a newborn child." Id. Finally, he allegedly told her that he thought a mother should stay home for at least two years after having a baby and that he would have to talk to Sowa and Irwin about it. Id. ¶¶ 8-9. According to plaintiff, she did not respond to him during this conversation. Id. ¶ 9.

For the next three months, according to plaintiff, Freeman was "curt and rude" towards her and spoke to her more infrequently that he had in the past. Id. ¶¶ 12-14. Plaintiff has declared that in early September, 2007 she again spoke to Freeman about her need for maternity leave. Id. ¶ 16. On September 21, 2007, Freeman advised her that she was terminated, citing budget cuts. At the time, Jeff Irwin was aware that plaintiff was pregnant but has testified that he did not know that she had requested maternity leave. Mancl Decl. Ex. 3 (Irwin Depo. at 43:25-44:9). Paul Sowa was also aware that plaintiff was pregnant. Id. Ex. 2 (Sowa Depo. at 25:23-26:8).

According to Sowa, the decision to terminate plaintiff was

made by Jeff Irwin and him, with input from Freeman. Mancl Decl. Ex. 2 (Sowa Depo. at 28:7-14). Sowa testified that Freeman advised him to terminate plaintiff and another employee at the same time because "we were moving into the winter and didn't need a sales rep at the time, and that . . . it looked like we were going into a recession. We were cutting back." Id. Ex. 2 (Sowa Depo. at 28:19-29:2). Sowa didn't review any documents, such as sales reports, in considering whether to terminate plaintiff. Id. Ex. 2 (Sowa Depo. at 29:24-30:19). Irwin also testified that defendant terminated plaintiff because of the performance of the entire sales team and the economy. Declaration of Tory Pankoff In Support of Defendant's Motion for Summary Judgment ("Pankoff Decl.") Ex. 4 (Irwin Depo. at 69:7-19).

Plaintiff has tendered evidence that defendant's 2007 sales were greater than its annual sales for the previous three years. Mancl Decl. Ex. 6-11. Plaintiff has tendered evidence that her 2007 sales, prior to her termination, were $948,928.70 or eighteen percent of defendant's total sales for the year. Mancl Decl. ¶¶ 7, 11, 12, Ex. 6, 10, 11. Paul Sowa has testified that plaintiff's job performance "wasn't an issue" in the decision to terminate her. Id. Ex. 2 (Sowa Depo. at 54:20-24).

Defendant terminated another member of the sales team, Justin Chantell, on the same day as plaintiff, and assertedly for the same reasons that she was terminated. Pankoff Decl. Ex. 4 (Irwin Depo. at 72:17-25). On February 21, 2008, defendant terminated Freeman. After that, defendant terminated sales employee Greg Lamm. Pankoff

4

Decl. Ex. 4 (Irwin Depo. at 73:3-8).

Plaintiff declared that she has learned that in January 2008, defendants hired a new male employee to "at least in part" serve in her previous position and that other male sales personnel had been assigned some of her duties. Johnson Decl. ¶ 19. Sowa also testified that in January 2008 defendant hired John Sorosinski to serve the Northern California and Nevada region. Mancl Decl. Ex. 2 (Sowa Depo. at 32:25-33:6, 64:4-6). In November 2007, defendant hired Tyler Irwin to perform some of plaintiff's job duties. Mancl Decl. Ex. 5 (Def.'s Response to Interrogatories # 8).

**II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56**

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence

of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S. at 289. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

### III. ANALYSIS

Defendant move for summary judgment on two grounds.[2] First,

---

[2] At oral argument, defendant abandoned its third grounds for its motion, in which it had asserted that plaintiff's claims must fail because California has codified a presumption of at-will employment.

defendant contends that "all" of plaintiff's evidence is inadmissible hearsay. Second, defendant argues that plaintiff's claims were not timely filed. For the reasons described herein, the court finds neither of these arguments persuasive, but nevertheless grants defendant's motion on plaintiff's third, fourth, seventh, and eighth causes of action.

**A.  Hearsay**

Defendant first argues that "all" of plaintiff's evidence is inadmissible under Federal Rule of Evidence 802 because it is hearsay. Despite this broad assertion, defendant appears to argue that only certain statements by Larry Freeman are inadmissible hearsay.[3] Specifically, defendant contends that the following statements attributed to Freeman are hearsay: 1) Mr. Freeman's question to her in November 2006 as to whether plaintiff intended to have more children, and 2) Mr. Freeman's statements when plaintiff informed him she was pregnant, in July 2007. The court concludes that these are not hearsay per Federal Rule of Evidence 801.

Hearsay is an out-of-court statement offered for the truth of

---

[3] Defendant also has set forth in its motion many of the plaintiff's allegations from her complaint in this case and her EEOC complaint, which defendant asserts are hearsay. Even if they were hearsay, a party may not rely only on its pleadings to defeat a motion for summary judgment. See Fed. R. Civ. P. 56(e); First Nat'l Bank, 391 U.S. at 289. Happily, plaintiff has not done so here. Plaintiff has tendered evidence in support of her opposition to defendant's motion, all of which is admissible except that identified *infra*. The court therefore considers defendant's argument only as it refers to evidence that plaintiff has actually tendered.

7

the matter asserted therein. Fed. R. Evid. 801(c). The Federal Rules of Evidence, however, define as "not hearsay" several categories of statements that would otherwise appear to fit this definition. Fed. R. Evid. 801(d). Among these are admissions by party opponents, which include statements offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). Here, defendant appears not to dispute that Freeman was defendant's agent during the time that these statements were made. Defendant argues instead that plaintiff has not shown that the statements concern a matter within the scope of his employment. Def.'s Reply at 4, citing United States v. Chang, 207 F.3d 1169, 1176 (9th Cir. 2000).

The court disagrees. In order for a statement to meet this definition, the plaintiff need only show that "the statement [is] related to a matter within the scope of the declarant's agency." Hoptowit v. Ray, 682 F.2d 1237, 1262 (9th Cir. 1982). Here, plaintiff has tendered unrefuted evidence that Freeman was her supervisor and that Sowa and Irwin considered Freeman's input in their decision to terminate plaintiff. See Mancl Decl. Ex. 1 (Johnson Depo. at 79:12-17), Ex. 2 (Paul Sowa Depo. at 21:20-21, 25:4-6, 28:7-14). This suffices to show that Freeman's statements relative to plaintiff's ability to perform her job while pregnant or after having had a child related to a matter within the scope of his employment. Thus they are admissible under Rule 801(d)(2).

Plaintiff has tendered additional evidence, however, that is not admissible under the hearsay rules. Plaintiff has tendered the declaration of John Johnson, in which he stated that Mr. Sorosinski, another employee of defendant's, stated that Freeman made statements about defendant's reasons for terminating plaintiff. J. Johnson Decl. ¶ 6. Although Freeman's statements themselves may fall under Rule 801(d)(2)'s ambit, plaintiff has not shown that Sorosinski's statements are similarly admissible. Accordingly, the court sustains defendant's objection to this evidence.

**B. Timeliness**

Defendant's next argument is that plaintiff failed to file her complaint with the EEOC in a timely manner. Defendant acknowledges that plaintiff filed a claim with the California Department of Fair Employment and Housing 193 days after her allegedly improper termination and filed a claim with the EEOC 207 days after her termination. Defendant contends that this violates 42 U.S.C. § 2000e-5(e), which requires the complaint to be filed with the EEOC not later than 180 days from the allegedly unlawful employment practice.

The flaw in defendant's argument is that 42 U.S.C. § 2000e-5(e) permits a claim to be filed with the EEOC up to 300 days after the allegedly unlawful employment practice when "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . ." Defendant does not dispute that the California

9

Department of Fair Employment and Housing meets this description. See Cal. Gov't Code §§ 1230 et seq. By defendant's own calculation, plaintiff's EEOC petition was timely filed in accordance with 42 U.S.C. § 2000e-5(e). Defendant's motion is denied on this basis.

**C.  Plaintiff's Prima Facie Showing**

Although defendant has not raised it as such, defendant's motion suggests that plaintiff cannot make a prima facie case for any of her pled causes of action because she was terminated for a non-discriminatory reason. See generally Def.'s Mot. for Summ. J. at 2-3. Plaintiff, in her opposition, has set forth evidence in an attempt to show that she has met her prima facie burden on each of her causes of action.

Plaintiff has pled the following causes of action: discrimination on the basis of sex in violation of Title VII and the FEHA, discrimination on the basis of pregnancy in violation of Title VII's Pregnancy Disability Act and California's Pregnancy Disability Leave Law, retaliation on the basis of sex and pregnancy in violation of Title VII and the FEHA, and wrongful termination in violation of public policy. The court considers each in turn.

**1.  Discrimination Claims Under Title VII and the FEHA**

Plaintiff alleges wrongful termination based on her sex and her pregnancy in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, et seq. and California's Fair Employment and Housing Act. Under Title VII it is unlawful for the employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privilege of employment,

because of such individual's . . . sex," which includes the employee's pregnancy and childbirth. 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1). Similarly, under the FEHA, an employer may not discriminate against an individual seeking, obtaining, or holding employment, based on that employee's sex, including pregnancy. Cal. Gov't Code §§ 12920, 12926. Claims of employment discrimination under the FEHA are analyzed under the same framework as those brought under Title VII. Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000); Beyda v. City of Los Angeles, 65 Cal. App. 4th 511, 517 (1998).

"In order to prevail in a Title VII case, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).

Plaintiff can establish the prima facie case of disparate treatment through the framework set forth in McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973). "To establish a prima facie case of wrongful termination under McDonnell Douglas, plaintiff must offer proof that: (1) [s]he was a member of a protected class; (2) [s]he was performing his job in a satisfactory manner; (3)[s]he suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the protected class were

11

treated more favorably." Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 654 (9th Cir. 2002). In the alternative, plaintiff can offer evidence that "give[s] rise to an inference of unlawful discrimination," Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981), by presenting direct or circumstantial evidence of intentional discrimination which indicates "it is more likely than not" that the employer's actions were based on unlawful considerations. Jauregui, 852 F.2d at 1134 (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977)).

Here, plaintiff has tendered evidence that she became pregnant during her employment tenure, thus satisfying the first prima facie element for her Title VII and FEHA discrimination claims. See Johnson Decl. ¶ 5. She has tendered evidence that she performed her job in a satisfactory manner, satisfying the second element. Mancl Decl. Ex. 6-11, Ex. 2 (Sowa Depo. at 54:20-24); Johnson Decl. ¶¶ 21-26. She has tendered evidence that she suffered an adverse employment action, namely termination, which defendant does not dispute. Finally, she has tendered evidence that other male (non-pregnant) employees were treated more favorably, in that male employees were hired after her termination to perform at least some of her job duties. Johnson Decl. ¶ 19; Mancl Decl. Ex. 2 (Sowa Depo. at 32:25-33:6, 64:4-6), Ex. 5 (Def.'s Response to Interrogatories # 8).

Defendant asserts, with little evidentiary support tendered, that plaintiff's termination was due to general restructuring and downsizing. See generally Def.'s Mot. for Summ. J. at 2-3. That

assertion alone is not enough to defeat an employee's claim for discrimination under the FEHA or federal law. See Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 358 (2000) ("Invocation of a right to downsize does not resolve whether the employer had a discriminatory motive for cutting back its work force, or engaged in intentional discrimination when deciding which individual workers to retain and release."); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000) ("Where, as here, the discharge in question results from a general reduction in workforce, [plaintiffs] . . . need show . . . that the discharge occurred under circumstances giving rise to an inference of . . . discrimination." (citations omitted)). Downsizing cannot be an adequate justification if the plaintiff has tendered evidence of defendant's on-going need for her services. Coleman, 232 F.3d at 1281. Here, defendant has tendered no evidence explaining why plaintiff was "downsized" before other employees nor why other, male employees were retained to perform her job duties after her discharge. Accordingly, plaintiff has tendered sufficient evidence to meet her burden to make a prima facie case of discrimination under Title VII and the FEHA, which is not overcome by defendant's invocation of its need to downsize. Defendant's motion is denied as to plaintiff's first, second, fifth, and sixth causes of action.

**2. Retaliation Claims Under Title VII and the FEHA**

In plaintiff's third, fourth, seventh, and eighth causes of action, she alleges that defendant retaliated against her in

13

violation of Title VII and the FEHA.[4] Under either statute, plaintiff must make a prima facie showing that (1) she engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69-70 (2006); Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1044 (2005).

Plaintiff contends that the "protected activity" in which she engaged was becoming pregnant. See Pl.'s Opp'n to Def.'s Mot for Summ. J. at 26-27. However, this is not the type of activity for which a retaliation claim will lie under either Title VII or the FEHA. Title VII forbids retaliation "because [the employee] has opposed any practice made unlawful under this chapter." 42 U.S.C. § 2000e-3(a). Similarly, under the FEHA a retaliation claim arises where the defendant has taken a adverse action against an employee because the employee "has opposed practices forbidden under this part or has filed a complaint . . . ." Cal. Gov't Code § 12940(f); Ikekaogwu v. City of Los Angeles, 75 Cal. App. 4th 803, 814 (1999); Fliat v. North American Watch Corp., 3 Cal. App. 4th 467, 476 (1992). In other words, both statutes protect an employee who complains or otherwise seeks redress for discrimination she believes she has suffered; a retaliation claim does not lie on the basis of the alleged discrimination alone. See Sias v. City

---

[4] Plaintiff's eighth cause of action alleges violation of the Pregnancy Leave Law, which is a part of the FEHA. See Cal. Gov't Code § 12945.

14

Demonstration Agency, 588 F.2d 692 (9th Cir. 1978); Fliat, 3 Cal. App. at 476. Accordingly, summary judgment must be granted to defendant on these causes of action.

### 3. Wrongful Termination in Violation of Public Policy

Under California common law, a plaintiff may sue a former employer in tort for wrongful termination in violation of public policy. Stevenson v. Superior Court, 16 Cal. 4th 880, 887 (1997). In order to succeed in the claim, the plaintiff must show that she was terminated contrary to a "public policy," which is defined as arising from constitutional or statutory authority, benefitting the public rather than only the interests of an individual, being well-established at the time of the discharge, and being "substantial and fundamental." Id. at 889-90. The California Supreme Court has expressly held that alleged sexual discrimination in employment termination can support a cause of action for wrongful termination in violation of public policy. Rojo v. Kliger, 52 Cal. 3d 65 (1990). Consequently, because plaintiff has made a prima facie case of employment discrimination on the basis of sex and pregnancy in violation of the FEHA and Title VII, she also has made a prima facie showing of wrongful termination in violation of public policy.

## IV. CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's third,

////

////

15

fourth, seventh, and eighth causes of action are dismissed.

IT IS SO ORDERED.

DATED: May 20, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT